This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Scott Lowrie ("Lowrie") and U.S. Coaters (together "Appellants"), appeal from a judgment rendered in the Summit County Court of Common Pleas, in favor of Appellee, Holiday Properties Acquisition Corp. ("Appellee"). We affirm.
 I. {¶ 2} Chempower, Inc. ("Chempower") hired Lowrie as corporate counsel, a director position, in January, 1990. Thomas Kukk ("Kukk"), the president of Chempower, and Mark Rochester were the majority owners of Chempower. In 1991, Kukk appointed Lowrie as general manager of Advance Coil Industries ("ACI"), an unincorporated subsidiary of Chempower. In 1996, Lowrie resigned as corporate counsel and served Chempower solely as the general manager of ACI until Chempower terminated his employment in 1998. While employed by Chempower, Lowrie incorporated his own company, U.S. Coaters, and solicited a partner and customers for his company, as well as located a building to house the operation. U.S. Coaters commenced business in May, 1999.
 {¶ 3} In 1997, American Eco Holding Corporation ("American Eco") purchased Chempower and operated Chempower as a subsidiary. In September 1999, Chempower filed suit against Appellants, claiming misappropriation of trade secrets, breach of fiduciary duty, and tortious interference with business relations. Appellants counterclaimed for abuse of process.
 {¶ 4} On August 4, 2000, American Eco filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Delaware, which stayed the action in this case. Ultimately, the bankruptcy trustee approved the sale of some Chempower assets to Appellee, including the case at bar. The sale resulted in the case being reinstated, and Appellee filed for summary judgment on an amended complaint adding a count for breach of contract and deceptive trade practices. Appellants filed a motion to dismiss for lack of jurisdiction. On May, 9, 2001, the trial court granted Appellee summary judgment on the breach of contract claim and on all counts of Appellants' counterclaim, and granted partial summary judgment to Appellants on the misappropriation of trade secrets and deceptive trade practices claims. Appellants' motion to dismiss the remaining claims was denied.
 {¶ 5} The case went to trial, with the jury finding for Appellee and the court ordering Lowrie to compensate Appellee the sum of $708,000 with interest, and ordering both Appellants to compensate Appellee the sum of $2,500,000. Appellee moved for an award of prejudgment interest, which was denied.
 {¶ 6} Appellants timely appealed, presenting seven assignments of error. We rearrange the assignments of error and combine the third and fourth for ease of discussion. Appellee cross-appealed, raising one assignment of error.
 II. Appellants' Assignment of Error No. 1 {¶ 7} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT THE CLAIMS MADE IN THIS LAWSUIT WERE ASSIGNABLE TO APPELLEE AND THAT APPELLEE WAS THE REAL PARTY IN INTEREST AND THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE LAW OF ASSIGNMENT."
 {¶ 8} Appellants argue that the trial court erred in a May 9, 2001 order denying Appellants' motion to dismiss because Delaware law is applicable, and Delaware law disallows the assignment of Chempower's claim to Appellee. Further, Appellants state that even if Ohio law is applicable, the assignment is likewise illegal under Ohio law. Appellants' arguments are not well taken.
 {¶ 9} It is axiomatic that an action must be prosecuted by the real party in interest. See Civ.R. 17(A); see, also, State ex rel.Dallman v. Court of Common Pleas (1973), 35 Ohio St.2d 176, 178. A "real party in interest" has been described as "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefitted or injured by the outcome of the case." West Clermont Edn. Assn. v. West Clermont Bd. ofEdn. (1980), 67 Ohio App.2d 160, 162. (Emphasis sic.) The substantive law creating the right being sued upon determines the real party in interest. See Shealy v. Campbell (1985), 20 Ohio St.3d 23, 25.
 {¶ 10} Civ.R. 25 authorizes the substitution of parties in the event of certain stated contingencies. Civ.R. 25(C) provides, in relevant part, "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." Civ.R. 25(C) thus permits substitution by one who succeeds to an interest previously held by another. See, e.g., Maysom L.P. v. Mayfield, (1994), 96 Ohio App.3d 543,548. "According to Civ.R. 17(A), substitution operates as if the action had been commenced in the name of the real party in interest." Boedekerv. Rogers (2000), 140 Ohio App.3d 11, 20.
 {¶ 11} "A corporation may sue or be sued." R.C. 1701.13(A). In carrying out the purposes stated in its articles and subject to limitations prescribed by law or in its articles, a corporation may encumber, sell, exchange, transfer, and dispose of property of any description or any interest in such property. R.C. 1701.13(F)(1).
 {¶ 12} When a debtor files in bankruptcy, any and all choses in action in which the debtor may have had an interest become an asset of the bankruptcy estate subject to the sole discretion and control of the bankruptcy trustee. Hayes v. Allison (Apr. 23, 1993), 2d Dist. No. 13481. Nonetheless, under the bankruptcy code, Section 363, Title 11, U.S. Code, actions concerning the assignment of claims must conform to applicable state laws. In re J.E. Marion, Inc. (Bankr.Ct.S.D.Tx. 1996),199 B.R. 635, 637.
 {¶ 13} A chose in action is a right of action for money arising under contract, but also includes the right to recover pecuniary damages for torts inflicted upon person or property. Cincinnati v. Hafer (1892),49 Ohio St. 60, 65-66. "In the state of Ohio, choses in action are assignable." McKnight v. Columbian Land Building Co. (Nov. 5, 1920), 23 Ohio N.P.(N.S.) 189, 191. A "restraining principle of public policy" can operate to render a chose in action unassignable. Thoms v.Bissinger Candy Co. (1946), 77 Ohio App. 339, 340. "Unless a right or claim will survive the death of its owner, it cannot be assigned." Stateex rel. Crow v. Weygandt (1959), 170 Ohio St. 81, paragraph one of the syllabus. "In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." R.C. 2305.21.
 {¶ 14} We begin our discussion of this assignment of error by noting that, pursuant to Civ.R. 25, the trial court, upon motion, substituted Appellee for Chempower. The substitution makes Appellee the party in interest if the assignment of this claim from Chempower to Appellee is permissible under state law.
 {¶ 15} Appellants first claim that Delaware law applies, and Delaware law precludes this assignment of the claim. Appellants' authority is the bankruptcy purchase agreement between Chempower and Appellee. Section 9.11 of the contract, titled "Governing Law," states that the interpretation and construction of the agreement is governed by the laws of Delaware. Therefore, Appellants claim, the issue of assignability is also governed by Delaware law.
 {¶ 16} "As a general rule a non-party may not assert contract rights unless it is a third-party beneficiary under the contract or such standing is conferred by statute." Akron v. Castle Aviation Inc. (June 9, 1993), 9th Dist. No. 16057, at 4. Because the purchase agreement is between Chempower and Appellee, and Appellants are not a third-party beneficiary to the contract, Appellants do not have standing to assert rights accorded by the terms of the contract. Even if Appellants did have standing, it is questionable whether the choice of law provision would extend to this cause of action, because it is not based upon the interpretation or construction of the contract. Therefore Appellants' argument that Delaware law is applicable is not well taken.
 {¶ 17} Regarding the argument that Ohio law bars the assignment at issue, Appellants cite, along with cases from other states, two cases decided in Ohio: Everhardt v. Everhardt (Feb. 6, 1987), 6th Dist. No. L-86-060, and In re Schmelzer (S.D.Ohio 1972), 350 F. Supp. 429. Neither case is on point. In Everhardt, the court held that "a personal injury settlement is marital property only to the extent lost earnings and medical expenses have adversely impacted upon the marital estate." In reSchmelzer was an adjudication regarding the ability of a bankrupt debtor to retain an unresolved personal injury claim as exempted property under the Bankruptcy Act. In that case, the court held that a judgment creditor could not attach an unliquidated claim in personal injury of a bankrupt. Further, the Schmelzer court, recognizing an absence of authority on the issue of assignability of a personal injury claim, limited its holding to state "that the mere existence of a survival statute which extends to administrators and its survivors the right to bring a wrongful death action for tort done to the person of the decedent, does not create by implication the right of free assignability of personal injury claims in tort." In re Schmelzer, 350 F. Supp. at 439.
 {¶ 18} The most obvious problem with applying these cases as precedent here is the lack of a personal injury claim. No one in this case is asserting that a personal injury claim is assignable. This Court is reviewing a case adjudicating an alleged breach of fiduciary duty and tortious interference with business relations. We are left to determine if such are assignable under Ohio law.
 {¶ 19} Survivor statutes are remedial and therefore liberally construed. Squire v. Guardian Trust Co. (C.P. 1945), 52 Ohio Law Abs. 207, 216. "Property" is a generic term embracing dominion or indefinite right of use, enjoyment, and disposition, which may be lawfully exercised over particular things or objects, animate or inanimate. Id. Injuries to property include a cause of action against a director of an institution for breach of duty. Id. at 217.
 {¶ 20} This case is a cause of action for injury to property. In Ohio, pursuant to R.C. 2305.21, such claims survive and, therefore, are assignable, unless there is some restraining principle of public policy. Appellants correctly point out that there may be such a principle in the assignment of a personal injury claim. However, no binding authority has been proposed asserting that there is a public policy principle against transferring a cause of action for breach of fiduciary duty or tortious interference with business relations, and we know of none. The assignment was lawful, and the jury instructions on assignment were correct. Appellants' first assignment of error is overruled.
 Appellants' Assignment of Error No. 2 {¶ 21} "THE TRIAL COURT ERRED IN DENYING [APPELLANTS'] MOTION TO DISMISS AND FOR SUMMARY JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION."
 {¶ 22} In the second assignment of error, Appellants argue that, because the claim is not assignable, only the bankruptcy trustee can pursue this claim, and jurisdiction is proper only in the bankruptcy court.
 {¶ 23} We have already found that this claim was assignable; therefore, Appellants' second assignment of error is overruled.
 Appellants' Assignment of Error No. 6 {¶ 24} "THE TRIAL COURT ERRED IN ALLOWING ROBERT ROHR TO TESTIFY AS AN EXPERT WITNESS AND INSTRUCTING THE JURY TO CONSIDER MR. ROHR'S TESTIMONY AS AN EXPERT."
 {¶ 25} In his sixth assignment of error, Appellants state that Robert Rohr testified as an expert without the proper qualifications to do so. Further, Appellants claim that any references to expert testimony in the jury instructions applied only to Rohr, and since Rohr could not be an expert, the jury instructions were erroneous. This argument is not well taken.
 {¶ 26} The admission or exclusion of evidence rests soundly within the trial court's discretion. State v. Sage (1987), 31 Ohio St.3d 173,180. The trial court's decision concerning the admission or exclusion of evidence will not be reversed absent an abuse of that discretion. Id. at 182. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 27} Rohr is a Certified Public Accountant of inactive status and holds a Bachelor's degree in accounting and a Master's degree in finance. He is currently the President of Holiday Properties, and prior to that, he was the comptroller of Chempower. He also worked seven years as the comptroller of another company and as an accountant for a public accounting firm where he conducted small business audits. During his career, Rohr was involved in purchasing businesses; while at Chempower, he participated in four or five acquisitions. Rohr was intimately involved with the process of taking Chempower from a private to a public entity corporation.
 {¶ 28} After a careful review of the foundation laid for Rohr's testimony as an expert, we conclude that the trial court did not abuse its discretion in admitting Rohr's testimony regarding damages. Because Rohr's testimony as an expert was permissible, the jury instructions regarding expert testimony are not erroneous. Appellants' third assignment of error is overruled.
 Appellants' Assignment of Error No. 7 {¶ 29} "THE TRIAL COURT ERRED IN PERMITTING APPELLEE TO INTRODUCE EVIDENCE AT TRIAL OF ALLEGED VIOLATIONS BY MR. LOWRIE OF THE CODE OF PROFESSIONAL RESPONSIBILITY FOR ATTORNEYS."
 {¶ 30} In this assignment of error, Appellants claim that Appellee's questions to Lowrie concerning the code of professional responsibility were irrelevant and resulted in a verdict which is the product of the jury's passion and prejudice, as well as excessive damages. Appellants state that, therefore, they are entitled to a new trial. We disagree.
 {¶ 31} As previously noted, the admission or exclusion of evidence rests soundly within the trial court's discretion.
 {¶ 32} It is a fundamental principle of appellate review that a court will not consider an error that an appellant was aware of, yet failed to bring to the attention of the trial court. See State v. Awan
(1986), 22 Ohio St.3d 120, 122. See, also, State v. Williams (1977),51 Ohio St.2d 112, 117, vacated on other grounds (1978), 438 U.S. 911,57 L.Ed.2d 1156. Moreover, the general rule regarding specific objections is that a party who has made specific objections to the admission of evidence thereby waives all other objections and cannot assert such other grounds on appeal. State v. Clary (1991), 73 Ohio App.3d 42, 51; Johnsonv. English (1966), 5 Ohio App.2d 109, 113.
 {¶ 33} When Lowrie was testifying, he stated that he was no longer an attorney for Chempower at the time he was starting U.S. Coaters. However, by his own admission, he had signed letters on Chempower's stationery with the title "of counsel" after he had changed job positions. The definition, acceptable uses, and implications of the title "of counsel" is explained in Disciplinary Rule 2-102(A)(4), and so Lowrie was asked to read that portion of the disciplinary rules aloud to the jury. Lowrie objected to having only a portion of the section read, asking specifically that the wording pertaining to law firms be included. The court sustained the objection and ordered that the whole section be recited, including the requested portion. The record shows no objection for relevance. Therefore, Lowrie has waived the relevance argument.
 {¶ 34} The next reference to the disciplinary rules was made when Lowrie was handed a copy to Disciplinary Rule 4-101 to read to himself. He testified that it pertained to the preservation of confidences and secrets of a client. He further testified that he felt he had satisfied that requirement while a corporate counsel to Chempower. The rule was not read to the jury, nor did the jury receive a copy of it. We find no abuse of discretion in allowing Lowrie to read it to himself, and then stating generally what it pertained to and stating his feelings that it was not breached while he was counsel at Chempower.
 {¶ 35} In addition, any reference to either rule made in opening or closing arguments is not evidence, and the jury was so instructed. Appellants' seventh assignment of error is overruled.
 Appellants' Assignment of Error No. 4 {¶ 36} "THE TRIAL COURT ERRED IN SUBMITTING CLAIMS TO THE JURY SINCE THERE WAS NO EVIDENCE OF DAMAGES AND THE VERDICT ON COUNTS I AND II ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Appellants' Assignment of Error No. 3 {¶ 37} "THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION FOR DIRECTED VERDICT MADE AT THE CONCLUSION OF APPELLEE'S CASE AND AGAIN AT THE CONCLUSION OF THE EVIDENCE AND ERRED IN DENYING APPELLANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, ALTERNATIVELY, FOR A NEW TRIAL."
 {¶ 38} In his fourth assignment of error, Appellants argue there was insufficient evidence of damages to submit the issue to the jury. He also argues that the claims against him for breach of fiduciary duty cannot be supported by the evidence submitted to the jury. Likewise, Appellants state that the evidence cannot support the claim against Lowrie and U.S. Coaters for wrongful interference with a business relationship.
 {¶ 39} In the third assignment of error, Appellants argue that their motions for directed verdict should have been granted at the close of the Appellee's case, and again at the close of evidence because there was no evidence presented that Lowrie's activities while employed by Chempower amounted to breach of fiduciary duty or breach of loyalty. Likewise, Appellants argue that their actions did not amount to tortious interference with business relations. In addition, Lowrie argues that he cannot be held personally responsible for acts of U.S. Coaters which are in competition with ACI. Lowrie also states that, for the same reasons, it was error to deny his motion for JNOV or, alternatively, a new trial. We disagree.
 {¶ 40} As an initial matter, this court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. Statev. Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Manges, at ¶ 25. We address each theory of relief individually.
 Manifest Weight {¶ 41} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 {¶ 42} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [jury/trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment/conviction] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment/conviction]." State v. Martin
(1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 43} To prevail on a claim of breach of fiduciary duty, it is necessary to demonstrate the existence of a duty, a failure to observe the duty, and an injury resulting proximately therefrom. Massara v.Henery (Nov. 22, 2000), 9th Dist. No. 19646, at 5, appeal not allowed (2002), 91 Ohio St.3d 1483, quoting Strock v. Pressnell (1988),38 Ohio St.3d 207, 216. "It is well established that a corporate officer occupies a position of trust in relation to his corporation." WingLeasing, Inc. v. M B Aviation, Inc. (1988), 44 Ohio App.3d 178,180, citing Thomas v. Matthews (1916), 94 Ohio St. 32, 43. "Such relationship imposes upon directors duties in the nature of a fiduciary obligation." Wing Leasing, Inc., 44 Ohio App.3d at 180; see, also, Radolv. Thomas (C.A.6, 1985), 772 F.2d 244. The principles which govern the fiduciary relationship between a corporation and its directors include a duty of good faith and a duty of loyalty. R.C. 1701.59(B) and1701.60(A)(1); Wing Leasing, Inc. 44 Ohio App.3d at 181.
 {¶ 44} "The Ohio Supreme Court has written that tortious interference with business relationships occurs `when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another.'" Pappas v. United Parcel Service (Apr. 11, 2001), 9th Dist. No. 20226, at 8, quoting A B-Abell ElevatorCo. v. ColumbusCent. Ohio Bldg. Constr. Trades Council (1995),73 Ohio St.3d 1, 14. In order to prevail on a claim of tortious interference with business relationships against an employee, the plaintiff must demonstrate that the employee acted solely in his or her own personal capacity, and not within the scope of the employee's authority. Pappas, supra at 8.
 {¶ 45} At trial there was testimony that Lowrie was corporate counsel to Appellee's predecessors in interest, and continued to present himself in that capacity after his resignation of the position and while he was working contrary to ACI and Chempower's interests. Witnesses included ACI and Chempower customers who testified that Lowrie contacted them to solicit their business away from ACI and Chempower while Lowrie was still employed by those companies. Further, there was testimony regarding Lowrie's activities on company time that were geared toward starting his own competing interest.
 {¶ 46} The quantity and nature of the evidence presented is such that this court cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Therefore, Appellants' argument that the judgment is against the manifest weight of the evidence fails.
 Directed Verdict {¶ 47} Pursuant to Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Posinv. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. However, when the party opposing the motion for directed verdict has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695.
 {¶ 48} We review a trial court's ruling on a motion for directed verdict de novo because it presents us with a question of law. Schaferv. RMS Realty (2000), 138 Ohio App.3d 244, 257. A motion for directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 119-120. A directed verdict motion made at the close of a plaintiff's evidence is evaluated solely on the plaintiff's evidence. Reitz v. Akron Aerie No. 555 Fraternal Order of Eagles, Inc.
(Nov. 7, 2001), 9th Dist. No. 20454, at 4, citing Chem. Bank of New Yorkv. Neman (1990), 52 Ohio St.3d 204, 207.
 {¶ 49} "Because sufficiency is required to take a case to the [trier of fact], a finding that a [judgment] is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Having already found that the judgment was not against the manifest weight of the evidence, we conclude that the sufficiency requirement is met. Consequently, the denial of Appellants' motion for a directed verdict was proper.
 JNOV {¶ 50} In their motion for a JNOV, Appellants assert that "the facts and evidence established of record, construed most strongly in favor of [Appellee], do not support the verdict on count I awarding damages to [Appellee] in the amount of $708,000.00 for breach of loyalty or Count II awarding damages in favor of Plaintiff in the amount of $2,500,000.00 for tortious interference with business relations." Unlike the motion for directed verdict, Appellants here argue that the amount of damages awarded was not supported by sufficient evidence. We disagree.
 {¶ 51} Pursuant to Civ.R. 50(B), this Court reviews Appellants' motion for judgment notwithstanding the verdict de novo. Schafer,138 Ohio App.3d at 257; Reitz, supra at 5. In ruling on a motion for judgment notwithstanding the verdict, the evidence is construed most strongly in favor of the nonmovant, who is also given the benefit of all reasonable inferences from the evidence. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68; see, also, Buehler v. Falor (Jan. 30, 2002), 9th Dist. No. 20673, at 6. The Court must not weigh the evidence or the credibility of the witnesses when reviewing such a motion. Osler v.Lorain (1986), 28 Ohio St.3d 345, syllabus. A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Posin, 45 Ohio St.2d at 275.
 {¶ 52} Appellee presented exhibits that showed calculations of lost profits from 1999 through 2001. Chempower's one-time comptroller and later chief financial officer testified how the calculations were derived. He also testified that Chempower and ACI had no competition until Lowrie formed U.S. Coaters. Further, he testified as to the amount of compensation Lowrie received at the time he was paid by ACI and Chempower while working at his own interests. Lowrie's calculations differed, but the damages awarded by the jury were reflective of Appellee's evidence. Therefore, there is substantial evidence upon which reasonable minds could come to different conclusions on the amount of damages, and the denial of the motion for a JNOV was proper.
 D. Motion for a New Trial {¶ 53} At the end of the motion for a JNOV, Appellants added a one-sentence motion for a new trial as an alternative to the JNOV. Appellants offered the trial court no further or different arguments than those offered above to support the motion for a new trial.
 {¶ 54} Civ.R. 59 allows a trial court to grant a new trial upon the motion of either party. Pursuant to Civ.R. 59(A), a new trial may be granted to all or any of the parties and on all or part of the issues upon the following grounds: (1) irregularity or abuse of discretion such that a fair trial was prevented; (2) misconduct on the part of the jury or the prevailing party; (3) accident or surprise that the wronged party could not have guarded against; (4) excessive or inadequate damages resulting from the influence of passion or prejudice; (5) disproportion in the amount of the recovery; (6) the judgment is against the manifest weight of the evidence; (7) the judgment is contrary to law; (8) there exists newly discovered evidence that the party could not have discovered and produced using reasonable diligence; or, (9) an error of law brought to the attention of the trial court.
 {¶ 55} This Court reviews a trial court's ruling on a motion for a new trial for an abuse of discretion. Brooks v. Wilson (1994),98 Ohio App.3d 301, 304. "Abuse of discretion," in relation to the disposition of a motion for a new trial, implies an unreasonable, arbitrary, or unconscionable attitude upon the part of the court. Poskev. Merfl (1959), 169 Ohio St. 70, 75. Before this Court will disturb the trial court's decision regarding excessive or inadequate damages, the record must clearly demonstrate "highly improper argument by counsel tending to inflame [the] jury." Larrissey v. Norwalk Truck Lines, Inc.
(1951), 155 Ohio St. 207, 219.
 {¶ 56} Appellants do not explain under which theory they should be granted a new trial, nor do they point to evidence in support. If it were Appellants' intention to support a motion for a new trial with the same arguments presented for a JNOV, the arguments fail for the same reasons as stated in the section addressing the JNOV. This Court finds that the trial court did not abuse its discretion in denying Appellants' motion for a new trial.
 Appellants' Assignment of Error No. 5 {¶ 57} "THE VERDICT IN FAVOR OF [APPELLEE] CONSTITUTES AN UNLAWFUL DOUBLE RECOVERY AND SHOULD BE VACATED."
 {¶ 58} In the fifth assignment of error, Appellants assert that because Chempower received remuneration for its assets from its sale to American Eco, to grant recovery to Holiday Properties on this claim results in an unlawful double recovery.
 {¶ 59} This court notes that Appellants have failed to set forth a single, legal authority to support the contention that the trial court erred in permitting recovery. Appellants have failed to provide citations to authorities in support of this assignment of error as required by App.R. 16(A)(7) and Loc.R. 7(A)(7). Appellants had the burden of affirmatively demonstrating error on appeal. See Angle v. W. Res. Mut.Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2; Frecska v.Frecska (Oct. 1, 1997), 9th Dist. No 96CA0086, at 4. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. See Kremer v. Cox (1996),114 Ohio App.3d 41, 60. "[I]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardonev. Cardone (May 6, 1998), 9th Dist. Nos. 18349, 18673, at 18. As Appellants did not cite to any legal authority, their assertions cannot be considered as sufficient to meet their burden of affirmatively demonstrating error on appeal.
 {¶ 60} Accordingly, because Appellants have failed to set forth any legal error by the trial court in the fifth assignment of error, this court chooses to disregard it. Appellants' fifth assignment of error is overruled.
 III. Appellee's Assignment of Error {¶ 61} "THE TRIAL COURT ERRED IN DENYING APPELLEE'S MOTION FOR PREJUDGMENT INTEREST."
 {¶ 62} In this sole assignment of error, Appellee argues that the trial court should have awarded prejudgment interest pursuant to R.C. 1343.03(C) in light of Appellants' alleged failure to engage in good faith settlement negotiations.
 {¶ 63} R.C. 1343.03(C) states:
 {¶ 64} "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 65} An award of prejudgment interest is within the sound discretion of the trial court. Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Id. In order to have an abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins
(1984), 15 Ohio St.3d 164, 222.
 {¶ 66} In the order denying the request for prejudgment interest, the trial court states that it considered the motion, the brief in opposition, the evidence presented at the oral hearing on the matter held on May 1, 2002, the balance of the findings, and the jury trial in reaching its decision. The trial court concluded by stating that it could not find that Appellants failed to make a good faith effort to settle the case and that the Appellee did make a good faith effort to settle the case. We do not find an abuse of discretion in the trial court's decision. Appellee's sole assignment of error is overruled.
 IV. {¶ 67} Appellants' seven assignments of error are overruled. Appellee's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
CARR, J., BATCHELDER, J. CONCUR.